The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF MONROE, a Washington municipal corporation<br><br>        Plaintiff,<br><br>  v.<br><br>SETH FISHER, an individual and sole proprietor, d/b/a FISHER'S TOWING<br><br>        Defendant<br><br>SETH FISHER, a single person<br><br>        Counterclaim-Plaintiff<br><br>  v.<br><br>CITY OF MONROE, a Washington municipal corporation; AMY BRIGHT, an individual; BEN SWANSON, an individual; TIM QUENZER, an individual; and MICHAEL FITZGERALD, an individual,<br><br>        Counterclaim-Defendants. | Civil Action No. 2:20-1308-BJR (lead case)<br><br>Civil Action No. 2:20-cv-1253-BJR<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS |

## I. INTRODUCTION

This dispute centers on a piece of property that Defendant/Counterclaim Plaintiff Seth Fisher ("Fisher") owns in the City of Monroe ("the City"). Fisher operates a towing and storage business on the property pursuant to two conditional use permits issued by the City. He alleges that since at least 2007, the City and four of its employees, Amy Bright, Ben Swanson, Tim Quenzer, and Michael Fitzgerald ("the City employees"), have taken "arbitrary" and "affirmative" steps to shut down his business, including attempting to revoke the conditional use permits and coercing him into signing a Voluntary Correction Agreement. He alleges that the City's and the City employees' actions violated his due process and equal protection rights, as well as Article 1, Section 3 of the Washington State Constitution.

Currently before the Court is the City and the City employees' motion to dismiss Fisher's claims. Dkt. No. 23. The City employees move to dismiss all claims against them; the City moves to dismiss the monetary claim against it based on the Washington State Constitution. Fisher opposes the motion. Dkt. No. 24. Having reviewed the parties' pleadings, the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part the motion. The reasoning for the Court's decision follows.

## II. PROCEDURAL BACKGROUND

Fisher initiated this action by filing and serving a Claim for Damages against the City pursuant to RCW 4.96 on May 29, 2020. Case No. 20-1253, Dkt. No. 1-2 at ¶ 2.1. The requisite sixty days passed without a response from the City, so Fisher filed a complaint for damages in Snohomish County Superior Court on August 4, 2020. *Id.* at ¶ 1.8. In this complaint, not only did Fisher sue the City, but he also sued the above four City employees in their individual capacities.

The City and the City employees removed the matter to this Court on August 19, 2020 ("Case No. 20-1253"). Case No. 20-1253, Dkt. No. 1.

Just shy of one month earlier, on July 27, 2020, the City filed a complaint for damages against Fisher, also in Snohomish County Superior Court. Case No. 20-1308, Dkt. No. 1, Ex. 1. Fisher removed that case to this Court on September 1, 2020 ("Case No. 20-1308") and on October 7, 2020, the City, the City employees, and Fisher filed a joint motion to consolidate Case No. 20-1253 with Case No. 20-1308. Case No. 20-1308, Dkt. No. 14. This Court granted the motion two days later and instructed that all future filings be made in Case No. 20-1308. The Court further instructed that it will treat Fisher's complaint in Case No. 20-1253 as counterclaims in Case No. 20-1308. Case No. 20-1308, Dkt. No. 26.

The instant motion to dismiss was filed on February 9, 2021 and the matter is now ready for this Court's review.

### III. FACTUAL BACKGROUND

As stated above, Fisher owns Fisher's Towing, which he operates pursuant to two conditional use permits issued by the City. Fisher claims that the City and the City employees have been trying to shut down his towing and storage business for years. As evidence of this, Fisher alleges the following:[1]

(1) In 2007, the City conducted a permit revocation hearing but later "withdrew and cancelled the revocation";

(2) In 2012, Fisher and a "City Official" "got into a heated discussion" regarding the fact that Fisher was stacking shipping containers on his property and the City assumed he was

---

[1] All allegations are taken from the Complaint in Case No. 20-cv-1253 and the "Tort Claim/Complaint Fisher v. City of Monroe" dated May 20, 2020 attached as Exhibit A to the Complaint. *See* Dkt. No. 1-2, Case No. 20-cv-1253.

3

building a structure ("rack") without a permit. The City issued a "Notice to Stop Work" and a "Racking Violation" to Fisher, but "no compliance action was undertaken." Instead, Fisher reduced the size of the stacked shipping containers;

(3) Between 2012 and 2015, "the City took arbitrary but affirmative steps to stop Mr. Fisher's towing operation", including issuing notices of violations, attempting to retract the conditional use permits, and trying to "link" the two conditional use permits together because one of the permits "has a provision that could no longer be met by Mr. Fisher". "Nonetheless, Mr. Fisher always relied on both permits for his operation";

(4) In 2015 and 2016, the City continued to cite Fisher "for code violations";

(5) In early 2017, Fisher leased his property to Pauley's Towing. Mr. Pauley attempted to obtain a license to operate a towing business on Fisher's property from the City, but Ms. Bright rejected the application. In rejecting the application, Ms. Bright allegedly "cited the wrong address and therefore the wrong [conditional use] permit." Fisher alleges that Ms. Bright did this intentionally;

(6) Fisher alleges that Mr. Pauley abandoned the lease and sued him as a result of the City's refusal to issue the operating license. Fisher claims that he lost over $180,000 in rental fees, plus another $70,000 in litigation expenses; and

(7) In 2018, Fisher alleges that after "misapplying its own codes", the City "coerced" Fisher into signing "an extremely burdensome" Voluntary Correction Agreement that caused him to forfeit a number of his rights with respect to the property.

Based on the foregoing allegations, Fisher seeks: (1) a declaratory judgment that the Voluntary Correction Agreement is void, (2) an injunction barring the City and the City employees from continuing their "unconstitutional harassment", (3) an award of lost rental

income, (4) an award of just compensation of the fair market value of his property (this is in the alternative to the request for injunction and declaratory relief), and (5) punitive damages.

## IV. STANDARD OF REVIEW

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Id*. at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

## V. DISCUSSION

The City employees move to dismiss the § 1983 counterclaims against them, arguing among other things that Fisher has failed to allege personal participation by each of the employees sufficient to allow this Court to infer that they violated his equal protection and/or due process rights. The City employees also move to dismiss the monetary counterclaim based on the alleged violations of Article 1, Section 3 of the Washington State Constitution. The City joins in this motion. The Court will address each of the counterclaims in turn.

**A.     The § 1983 Counterclaims against the City Employees**

Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory." *Gomez v. Toldo*, 446 U.S. 635, 638 (1980). To state a claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, liability under § 1983 must be based on the personal involvement of the defendant in the alleged constitutional violation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). Therefore, in order to maintain his § 1983 counterclaims against the City employees individually, Fisher must allege facts that show that each was personally involved in the alleged deprivation of his civil rights. *May*, 633 F.2d at 167.

Fisher alleges that the City employees' actions violated his equal protection and due process rights and, as such, each is liable under § 1983. The City employees argue that the § 1983 counterclaims against them must be dismissed because the counterclaims fail to allege facts that demonstrate that they were personally involved in the conduct that gave rise to the alleged constitution violation.

**1.     The Equal Protection Counterclaim**

Fisher alleges that the City employees have conducted a fifteen-year campaign of arbitrary harassment against him to force him to shut down the towing and storage operations on his property. He claims that he is a "class of one" who has been impermissibly singled out for

unfavorable treatment by the City employees and that such treatment violates his equal protection rights. However, Fisher fails to allege that he has been treated differently from "similarly situated" landowners, a basic tenant of an equal protection claim. As such, the equal protection counterclaim against the City employees fails as a matter of law. *See Buchanan v. Maine,* 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently.") (emphasis in original) (internal quotation marks omitted).

### 2. The Due Process Counterclaim

To state a claim for substantive due process, Fisher must allege that the City employees: (1) arbitrarily deprived him of a fundamental right, and (2) that the alleged deprivation "shock[ed] the conscience and offend[ed] the community's sense of fair play and decency." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012). To state a claim for procedural due process, Fisher must allege that the City employees: (1) deprived him of a constitutionally protected liberty or property interest, and (2) denied him adequate procedural protections. *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

### 1. Amy Bright

Amy Bright is an associate planner and code compliance officer for the City. Case No. 20-cv-1253, Dkt. No. 1-2, ¶ 1.3. Fisher alleges that Bright violated his due process rights by attaching a letter to his gate in which the City demanded the right to inspect his property, by sending written correspondence directly to Fisher instead of his attorney, and by denying the operating license to the third-party to which Fisher leased his property. *Id*. at ¶¶ 2.4 and 3.6.1, fn2, and Ex. A.

Simply posting a letter "demanding entry" on the gate to Fisher's property does not constitute a due process violation. The letter was issued pursuant to the Voluntary Correction Agreement and it notified Fisher that the City intended "to conduct a site visit" one week later. *Id*. at p. 27. There is no allegation that Ms. Bright (or anyone else for that matter) entered Fisher's property as a result of the letter. To the contrary, Fisher refused to let the City inspect his property on the designated date. Dkt. No. 24, Ex. G. Likewise, the allegation that Ms. Bright corresponded directly with Fisher instead of his attorney does not establish a constitutional violation. While Fisher may wish that Ms. Bright only contact him through his attorney, her failing to do so does not constitute a constitutional violation in these circumstances.

However, the Court concludes that the allegation that Bright willfully denied the operating license to Fisher's leasee—while weak—is sufficient to withstand dismissal at this stage of the litigation. Fisher alleges a concerted effort by the City to arbitrarily stop towing operations on his property. While to date (per Fisher's allegations), the City has been unsuccessful in revoking Fisher's operating license, denying such a license to a leasee of the property could potentially amount to the arbitrary deprivation of a property right. If the City intends to deny such a license to any leasee of the property, such action could amount to an arbitrary diminishment in the property's value. The analysis will turn at least in part on the level of discretion the City has in issuing permits, information the Court does not have before it. *See e.g.*, *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir. 1993) (stating that "if a local agency has '[a]ny significant discretion' in determining whether a permit should issue, then a claimant has no legitimate entitlement and,

hence, no cognizable property interest"). Because Fisher alleges that Bright was personally involved in the permit denial, the allegation against her survives the motion to dismiss.[2]

### 2. Tim Quenzer

Tim Quenzer is the City's police chief. Case No. 20-cv-1253, Dkt. No. 1-2 at ¶ 1.5. There are no allegations against Chief Quenzer in the counterclaims. Fisher tries to overcome this deficit by arguing that as police chief, Chief Quenzer was responsible for enforcing City regulations regarding public safety. According to Fisher, "the City and [Chief] Quenzer wielded their exceptionally broad discretion under the regulations in a discriminatory manner in order to stop or impede [Fisher's] tow truck operation." Dkt. No. 24 at 4. Fisher also claims that Chief Quenzer was one of the signatories on the Voluntary Correction Agreement and, as such, the "facts in the [Voluntary Correction Agreement] are attributable to him". Dkt. No. 24 at 3.

Fisher's vague allegations that Chief Quenzer enforced the public safety regulations in a discriminatory manner are not sufficient to give rise to personal liability under § 1983. As stated above, Fisher must allege facts that show that each individually named City employee was personally involved in the alleged deprivation of his civil rights. Fisher does not allege that Chief Quenzer was in any way personally involved in the alleged dispute between Fisher and the City. And, while Chief Quenzer, as a supervisor, could be liable in his individual capacity for the actions of those he supervises, that is only the case if Fisher can establish that Chief Quenzer "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others,

---

[2] Ms. Bright argues that she is entitled to qualified immunity. Qualified immunity shields federal and state officials from lawsuits unless a plaintiff establishes (1) that the official violated a statutory or constitutional right, and 92) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity very well may be appropriate in this case at a later stage, but at this point in the litigation this Court does not have sufficient record in front of it to determine whether Ms. Bright's alleged action violated a clearly established constitutional right.

which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). There are no such allegations in this case. Indeed, there are no factual allegations whatsoever regarding police action in this case.

Nor does Chief Quenzer's signature on the Voluntary Correction Agreement open him to personal liability under § 1983. Fisher claims that he was "coerced" into signing the Agreement. Coercion may be a defense to the validity of the Agreement itself, but the fact that Fisher was allegedly coerced into signing it cannot be the basis for an independent constitutional violation. *See Avalos v. Baca*, 596 F.3d 583, 590-91 (9th Cir. 2010) (there is no "freestanding constitutional right to be free from a coercive waiver"); *Lil' Man In the Boat, Inc. v. City & Cty of San Francisco*, 2018 WL 4207260, *7 (N.D. Cal. September 4, 2018) (noting that the law does not recognize a standalone claim of coercion). In this lawsuit, the City is seeking to enforce the terms of the Voluntary Correction Agreement and Fisher has raised coercion as a defense to the City's breach of the Agreement claim, but the alleged coercion that caused him to sign the Agreement does not constitute a separate constitutional violation—and the fact that Chief Quenzer signed the Agreement in his official capacity of chief of police does not state a claim for personal liability under § 1983. The counterclaims against Chief Quenzer must be dismissed.

### 3.     Michael Fitzgerald

Mr. Fitzgerald is the Fire Marshal for the City. There are no factual allegations specifically referencing Mr. Fitzgerald or the fire department in the counterclaims. In his opposition to the motion to dismiss, Fisher alleges that Mr. Fitzgerald personally participated in the allege violation of Fisher's constitutional rights by signing the Voluntary Correction Agreement and by citing him for a "Combustible Materials" violation. This Court has already

10

determined, *supra*, that signing the Voluntary Correction Agreement does not open an individual to liability under § 1983. As for the "Combustible Materials" violation, Fisher refers the Court to page 3 of document titled "FINAL WARNING AND NOTICE OF CITY OF MONROE CODE VIOLATIONS". Dkt. No. 24 at 4. Page 3 does not reference a "Combustible Materials" violation. Nor, does it reference any action allegedly taken by Mr. Fitzgerald. In short, Fisher has failed to allege any factual allegations that are sufficient for this Court to reasonable infer that Mr. Fitzgerald was personally involved with the alleged constitutional misconduct. The § 1983 counterclaims against Mr. Fitzgerald must be dismissed.

### 4. Ben Swanson

Mr. Swanson is the Community Development Director for the City. Once again, there are no factual allegations against Mr. Swanson in the counterclaims. Instead, in his opposition brief, Fisher argues that Mr. Swanson "was the primary signer" on the Voluntary Correction Agreement and was "responsible for overseeing" Ms. Bright's conduct. Neither of these allegations is sufficient to establish personal liability under § 1983. The Court has already rejected the signatory argument. Moreover, it is black letter law that a supervisor is not vicariously liable for the actions of their subordinates under § 1983. A supervisor is liable under § 1983 only if he was personally involved in the alleged constitutional deprivation or there is a sufficient causal connection between the supervisor's own culpable conduct and the alleged constitutional violation. *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 798 (9th Cir. 2018). The counterclaims contain no such allegations. The § 1983 counterclaims against Mr. Swanson must be dismissed.

### B. The Washington State Constitutional Counterclaim

Fisher alleges that the City and the City employees are liable for violating Article 1, Section 3 of the Washington State Constitution. Specifically, he alleges that the City and the City

employees "failed to provide adequate notice and/or prepare a written takings impact assessment" prior to taking actions adverse to his property rights, including their "arbitrary refusal to reconsider their ignorance of [his conditional use permits]." Case No. 20-cv-1253 Dkt. No. 1-2 at ¶¶ 3.5.1-3.5.3. The City and the City employees move to dismiss this counterclaim as frivolous and unactionable. They argue that there can be no cause of action for damages based upon an alleged violation of the Washington constitution without the aid of augmentative legislation, something that does not exist in this case.

Fisher's claim for monetary damages against the City and the City employees based on the alleged violation of Article 1, Section 3 of the Washington State Constitution must be dismissed. Washington Courts have repeatedly stated that a claim for monetary damages based on an alleged violation of the Washington State Constitution does not exist without corresponding augmenting legislation. *See Spurrell v. Bloch*, 701 P.2d 529, 535 (Wn. App. 1985) ("The constitutional guarantee of due process, Const. art. 1, § 3, does not itself, without the aid of augmenting legislation, establish a cause of action for money damages against the state in favor of any person alleging deprivation of property without due process. This reasoning is equally applicable to both state and municipal entities."). The Court is not aware of, and Fisher does not cite to, Washington legislation that allows for monetary damages for violations of Washington's constitution.[3]

---

[3] Fisher's reliance on *Yim v. City of Seattle*, 451 P.3d 694 (Wn. 2019) is misplaced. In *Yim*, the plaintiffs sought to invalidate a city ordinance as unconstitutional; they did not seek monetary relief.

Therefore, Fisher's counterclaim for monetary damages based on alleged violations of Article 1, Section 3 of the Washington State Constitution must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part the City and the City employees' motion to dismiss. Each of the counterclaims against the City employees is dismissed, except Fisher's due process claim against Amy Bright. The monetary counterclaim against the City and the City employees based on an alleged violation of Article 1, Section 3 of the Washington State Constitution is also dismissed.

Dated this 17th day of May 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge